UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Michael Zlotnick, as administrator of the Estate of
Steven Zlotnick,

               Plaintiff,

   - against -

Crystal Run Village, Inc., Robin Cohen, Christopher
Fortune, and Jane/John Doe Nos. 1-2,

               Defendants.

21 Civ. 1001 (PED)

**DECISION
AND ORDER**

**PAUL E. DAVISON, U.S.M.J.:**

## I.  INTRODUCTION

Plaintiff Michael Zlotnick, as the administrator of the Estate of Steven Zlotnick, brings

this action against Defendants Crystal Run Village, Inc., Robin Cohen, Christopher Fortune, and

unidentified Jane or John Does under Section 504 of the Rehabilitation Act and Sections 3604

and 3617 of the Fair Housing Act, as well as certain New York state law claims, for the death of

Steven Zlotnick.  Defendants move to dismiss Plaintiff's federal law claims pursuant to Fed. R.

Civ. P. 12(b)(6) and Plaintiff's state law claims pursuant to Fed. R. Civ. P. 12(b)(1).  [Motion at

Dkt. 28-29; Reply in Support at Dkt. 31.]  Plaintiff opposes.  [Dkt. 30.]  For the reasons that

follow, Defendants' motion is **GRANTED**.

## II.  BACKGROUND

### A.    Statement of Facts[1]

This is a tragic case.  Steven Zlotnick was a 57-year-old man living in Crystal Run

---

[1] The facts are taken from the First Amended Complaint.  [Dkt. 15.]  Plaintiff's factual
allegations are presumed to be true and all inferences are drawn in Plaintiff's favor for the
purposes of this decision.

Village, a long-term residential care facility, when he died on February 6, 2019.  Zlotick lived with multiple intellectual and developmental disabilities including infantile autism, severe mental retardation, impulse control disorder, schizoaffective schizophrenia, seizure disorder, organic brain disorder, thyroid disease, dysphagia (difficulty swallowing), and gastroesophageal reflux disease.  Zlotnick was non-verbal but communicated through picture books with the assistance of staff.  Plaintiff was Zlotnick's brother and took an active role in Zlotnick's treatment.

Crystal Run Village is owned and managed by Defendant Crytsal Run Village, Inc. ("CRVI"), a private, non-profit organization which provides healthcare and residential services to over 500 people with developmental and intellectual disabilities throughout New York State. Zlotnick lived in CRVI's Hamptonburgh, New York facility.  CRVI employs "direct support professionals" who provide direct services to residents.  Cohen was employed by CRVI as a coordinator and was responsible for training direct support professionals.  Cohen was also temporarily assigned to work as the residence manager in the Hamptonburgh facility during the week of February 6, 2019 and was responsible for general oversight of the facility.  Fortune was employed as CRVI's chief program officer.

Zlotnick lived at Crystal Run Village for most of his life.  He had severe issues concerning eating and choking, which were well-documented by Crystal Run staff.  Zlotnick's May 2018 individual service plan stated that Zlotnick was at a high risk of choking and had a history of aspiration.  The plan required that all of Zlotnick's food be cut to one-half square inch pieces to reduce the risk of choking.  Staff were instructed to monitor Zlotnick during outings involving food, which could cause Zlotnick to become anxious and steal food.  Zlotnick's June 2018 individual protective oversight plan required constant supervision for Zlotnick based on

aggressive food-seeking behaviors.  A July 2018 behavior support plan indicated that Zlotnick may try to put as much food in his mouth as possible if he found food left unattended.  There were also several documented instances when Zlotnick attempted to aggressively steal food from strangers, to the point where he had to be restrained.  Prior to February 2019, there were at least five instances when Zlotnick choked, including three that occurred at Crystal Run, and one instance where a staff member allegedly slapped Zlotnick to expel food from his mouth.

Based on this behavior and Zlotnick's history of choking, staff were required to lock and secure any areas containing food, and to provide one-on-one supervision for Zlotnick during his meals.  Staff were also provided specific instructions in case Zlotnick stole food.  They were directed to first ask Zlotnick to hand them the food, and then ask him to sit down and supervise him while he finished consuming the food he had taken.  Staff were instructed not to try and physically take the food away from him, which may prompt Zlotnick to try and put the food in his mouth, increasing the risk of choking.  In addition, the Hamptonburgh facility was required to be staffed by a minimum of three individuals when at least five residents were present.  At the relevant time, six residents lived in the Hamptonburgh facility, including Zlotnick.

On February 6, 2019, Zlotnick and the other five residents at the Hamptonburgh Crystal Run facility were transported from the facility to attend programs during the day.  Zlotnick and four of the other residents returned to the facility by bus that afternoon, and the sixth resident was scheduled to arrive soon after.  At the time, Cohen was the only employee present.  According to the Amended Complaint, shortly before 2:50p.m., Cohen assisted a resident upstairs while Zlotnick was left alone downstairs in the facility.  Cohen then went downstairs to find Zlotnick holding a bag of bread that had been left out on the counter and unsecured.  Cohen approached

Zlotnick to attempt to take the bread away from him, at which time Zlotnick ran away and began putting bread into his mouth without chewing.  Cohen chased Zlotnick upstairs and attempted to forcibly take the bread away from him, as Zlotnick put more bread into his mouth.  Zlotnick began choking and fell to the floor.  Cohen attempted to perform the Heimlich maneuver and a mouth sweep, but Zlotnick ran away and into one of the bedrooms.

At approximately 2:50p.m., Cohen called 911.  At around that time, another staff member arrived at the facility, who, Plaintiff alleges, was supposed to be on duty twenty minutes earlier. Cohen and the staff member attempted to perform CPR on Zlotnick.  The paramedics arrived at approximately 3:00p.m. and assisted Cohen and the staff member to perform CPR.  Unconscious, Zlotnick was transferred to an ambulance where the paramedics attempted to intubate him. Zlotnick was taken to the Orange County Regional Medical Center where he died at approximately 4:02p.m..

It is uncertain where Zlotnick obtained the bread.  Nevertheless, the Amended Complaint states that paramedics reported to have observed bread throughout the facility, including in the downstairs common area and in the room where they found Zlotnick.  The bus driver who dropped Zlotnick off at the facility earlier that afternoon noticed Zlotnick holding bread, which he took from Zlotnick.  The bus driver also observed bread by the dumpster outside of the facility.  Additionally, an individual who did not work at the facility stated she would regularly donate bread to the facility.  Plaintiff alleges that Cohen failed to check Zlotnick when he arrived to ensure he did not have food on his person at that time.

**B.    Procedural History**

Plaintiff filed the Complaint [Dkt. 1] on February 4, 2021 and the Amended Complaint

4

[Dkt. 15] on March 25, 2021.  Defendants filed a motion to dismiss in lieu of an answer on July

14, 2021.  [Dkt. 28-29, 31.]  Plaintiff filed his objection on August 10, 2021.  [Dkt. 30.][2]

## III.   LEGAL STANDARD

### A.    Dismissal Under Fed. R. Civ. Pro. 12(b)

A motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) must be granted if the complaint

"fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding

a motion to dismiss, a court must "'accept as true the factual allegations made in the complaint

and draw all inferences in favor of the plaintiffs.'"  *Elektra Entm't Group, Inc. v. Barker*, 551 F.

Supp. 2d 234, 238 (S.D.N.Y. 2008) (internal citations omitted).  The complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ.

P. 8(a)(2).  The purpose of Fed. R. Civ. P. 8(a) is "to give fair notice of a claim and the grounds

upon which it rests so that the opposing party may identify the nature of the case, respond to the

complaint, and prepare for trial."  *Crawn v. Town of Wallkill*, Case No. 07 Civ. 1032 (SCR),

2008 WL 11517680, at *1 (S.D.N.Y. Dec. 8, 2008) (internal citations omitted).

The Supreme Court has held, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127

S.Ct. 1955, 1964-65 (2007).  Thus, in order to survive a motion to dismiss, "a complaint must

---

[2] Plaintiff argues that Defendants' motion should be stricken in its entirety because it was
filed a day later than the deadline set by the Court.  The Court will not do so.  *Mascaro Const.
Co. L.P. v. Loc. Union No. 210*, 391 F. App'x 13, 16 (2d Cir. 2010) ("district courts have broad
discretion to enforce deadlines, or to excuse the enforcement of deadlines").

contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 127 S.Ct. at 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citing *Twombly*, 127 S.Ct. at 1955).

With regard to subject matter jurisdiction, district courts "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In order to exercise supplemental jurisdiction over state law claims, "a federal court must first have before it a claim sufficient to confer subject matter jurisdiction." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The federal claim must also stem from the same "common nucleus of operative fact," such that "the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* "It follows that when a district court correctly dismisses all federal claims for lack of subject–matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state–law claims. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017).

**B.    Rehabilitation Act**

To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must show that: (1) he or she has a disability for purposes of the Rehabilitation Act; (2) he or she was "otherwise

qualified" for the benefit he or she had been denied; (3) he or she was been denied the benefits "solely by reason" of his or her disability; and (4) the benefit is part of a "program or activity receiving federal financial assistance." *Romano v. SLS Residential Services*, 246 F.R.D. 432, 440 (S.D.N.Y. 2007) (internal citations omitted). "[S]ection 504 prohibits discrimination against a handicapped individual only where the individual's handicap is unrelated to, and thus improper to consideration of, the services in question." *Cushing v. Moore*, 970 F.2d 1103, 1109 (2d Cir. 1992). Therefore, "the rehabilitation act does not create a cause of action based on a handicap that is directly related to providing the very services at issue." *Id.* at 1109.

A plaintiff may proceed under the Rehabilitation Act by showing discrimination of and discriminatory animus against a disabled person, under a theory of either disparate treatment or disparate impact. *Doe v. Pfrommer*, 148 F.3d 73, 82-83 (2d Cir. 1998). "[I]t is important to bear in mind that the purposes of such statutes are to eliminate discrimination on the basis of disability and to ensure evenhanded treatment between the disabled and the able-bodied." *Id.* Accordingly, claims under the Rehabilitation Act must allege disability discrimination but cannot be maintained based on allegations as to the adequacy of services rendered. *Id.* Additionally, there is no individual liability under the Rehabilitation Act. *S.W. by J.W. v. Warren*, 528 F.Supp.2d 282, 286 (S.D.N.Y. 2007).

## C.     Fair Housing Act

The Fair Housing Act was enacted "to eradicate discriminatory practices within a sector of our Nation's economy," and its language is intentionally "broad and inclusive." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 277 (S.D.N.Y. 2019) (internal citations omitted). To properly assert a claim under the Fair Housing Act, a plaintiff must show a relationship between

discriminatory conduct and the tenant or the tenant's housing. *Id.* (internal citations omitted).  A claim under the Fair Housing Act is appropriately dismissed "where a complaint's factual allegations do not permit the conclusion that the complained-of conduct occurred because of discriminatory animus." *Logan v. Matveevskii*, 175 F. Supp. 3d 209, 226 (S.D.N.Y. 2016) (citing *Smith v. NYCHA*, Case No. 08 Civ. 4717, 2009 WL 2486930, at *1 (S.D.N.Y. Aug. 14, 2009)). Claims made under the Fair Housing Act may be considered in tandem with claims under the Rehabilitation Act. *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18 (2d Cir. 2015) ("Because of similarities in the three statutes, intentional discrimination claims under the ADA, Rehabilitation Act, and FHA are considered in tandem.").

Section 3604(f)(2) of the Fair Housing Act makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of a sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap."  42 U.S.C. § 3604(f)(2).  To establish a prima facie case of discrimination under Section 3604(f)(2), a plaintiff must show that: (1) he is a member of a protected class; (2) that the defendant took an adverse action against him; and (3) that the adverse action took place under circumstances giving rise to an inference of discrimination. *Mazzocchi*, 204 F. Supp. 3d at 615.  Regarding the first prong, the Fair Housing Act's use of the word "handicap" carries the same legal meaning as the term "disability" in other federal civil rights statutes. *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 399 n.1 (S.D.N.Y. 2013).

Regarding the second prong, regulations prohibit the following conduct under Section 3604(f)(2): (1) limiting information regarding apartment availability; (2) using different qualification criteria, procedures, or standards for the rental; or (3) failing to process an offer to

rent a dwelling. *L.C.*, 987 F. Supp. 2d at 400 (citing 24 C.F.R. § 100.65(b)). Courts in this

circuit have also applied Section 3604(f)(2) to conduct after the sale or rental of a dwelling,

known as "post-acquisition conduct." *Mazzocchi v. Windsor Owners Corp.*, 204 F. Supp. 3d

583, 608 (S.D.N.Y. 2016) (collecting cases). A plaintiff may also show that the defendant

created a "hostile housing environment." *D.K. by L.K. v. Teams*, 260 F. Supp. 3d 334, 367

(S.D.N.Y. 2017). To do so, a plaintiff must show: (1) that the plaintiff was subjected to

harassment that was sufficiently pervasive and severe; (2) the harassment occurred because of the

plaintiff's membership in a protected class; and (3) the defendant is responsible for the allegedly

harassing conduct. *Favourite*, 381 F. Supp. 3d at 277.

 In order to satisfy the third prong to raise an inference of discrimination, a plaintiff "may

proceed under any or all of three theories: disparate treatment, disparate impact, and failure to

make reasonable accommodation." *Reg'l Econ. Cmty. Action Program, Inc. v. City of

Middletown*, 294 F.3d 35, 48 (2d Cir. 2002). In order to plead disparate treatment, a plaintiff

must present evidence that animus against the protected group was a significant factor for the

actions taken by the defendant. *L.C.*, 987 F. Supp. 2d at 400. To make a claim for disparate

impact, a plaintiff must show "the occurrence of certain outwardly neutral practices" and "a

significantly adverse or disproportionate impact on persons of a particular type produced by the

defendant's facially neutral acts or practices." *Id.* To plead a claim for failure to make a

reasonable accommodation, a plaintiff must show that the defendants knew or should have

reasonably known about the plaintiff's disability, the accommodation may be necessary to afford

the plaintiff an equal opportunity to use and enjoy the dwelling, and that the defendants refused

to make such accommodation. *Taylor v. The Hous. Auth. of New Haven*, 267 F.R.D. 36, 51 (D.

Conn. 2010), *aff'd sub nom.* 645 F.3d 152 (2d Cir. 2011).

Section 3617 of the Fair Housing Act prohibits retaliation for the enjoyment of any right created under the Fair Housing Act. *Favourite*, 381 F. Supp. 3d at 278. It states, in relevant part, that it "shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by section ... 3604 of this title." 42 U.S.C. § 3617. To prevail on a claim of retaliation under the Fair Housing Act, a plaintiffs must establish: (1) that he engaged in a protected activity by opposing conduct prohibited under the Fair Housing Act; (2) that the defendant was aware of the protected activity; (3) that the defendant subsequently took adverse action against the plaintiff; and (4) that there is a causal connection between the protected activity and the adverse action, that is, that a retaliatory motive played a part in the adverse action. *Favourite*, 381 F. Supp. 3d at 278 (citing *Lynn v. Vill. of Pomona*, 373 F.Supp.2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F.App'x 38 (2d Cir. 2007)).

## IV.   DISCUSSION

Plaintiff alleges that Defendants caused Zlotnick's death due to "systemic failures," and specifically that Defendants: (1) failed to appropriately train staff; (2) failed to establish polices, practices, and procedures to prevent Zlotnick from obtaining food; (3) failed to establish policies regarding the receipt of residents from day programs when understaffed; (4) failed to take appropriate action after prior instances where Zlotnick had choked; and (5) failed to sufficiently manage and supervise staff members at the Hamptonburgh facility. Plaintiff raises five claims under: (1) the Rehabilitation Act; (2) the Fair Housing Act; (3) the New York Human Rights Law; (4) common law negligence; and (5) wrongful death pursuant to the New York Estate, Powers and Trusts Law.

A.      **Claims Under the Rehabilitation Act**

Plaintiff's first cause of action is made under Section 504 of the Rehabilitation Act against all defendants, alleging that Defendants discriminated against Zlotnick based on his disabilities.  Plaintiff describes the discrimination as: (1) failing to provide necessary and proper care and supervision; (2) failing to provide a safe environment free from accessible food and drink; (3) failing to search Zlotnick's person for food; (4) failing to take action after prior instances where Zlotnick "and other residents" had choked; (5) failing to properly supervise, manage, and train staff; and (6) failing to detect and remedy Defendant's neglect of Zlotnick. Plaintiff also alleges that Defendants failed to reasonably accommodate Zlotnick's disabilities.

As an initial matter, Plaintiff's Rehabilitation Act claims against the individually named Defendants must be dismissed because there is no individual liability under the Rehabilitation Act.  Plaintiff concedes this point.  [Plaintiff's May 12, 2021 letter, Dkt. 20 at 2, "Plaintiff does not oppose dismissal of his Rehabilitation Act claim against Cohen and Fortune."]  Accordingly, these claims are dismissed.

Plaintiff's Rehabilitation Act claim as against the institutional Defendants must also be dismissed for failure to state a claim.  It is uncontested that Zlotnick had a disability for the purposes of the Rehabilitation act, and Defendants do not challenge Plaintiff's standing to sue on Zlotnick's behalf.  However, looking at the facts in the light most favorable to Plaintiff, and making all inferences in favor of Plaintiff, the claims amount to allegations that Defendants failed to provide Zlotnick with adequate care, as opposed to of allegations of discrimination or the failure to provide reasonable accommodations.  The Second Circuit has made it clear that such claims are beyond the scope of the Rehabilitation Act.

For example, in *Doe v. Pfrommer*,  the Second Circuit addressed a claim under the Rehabilitation Act where the plaintiff alleged both discrimination and the denial of reasonable accommodations in relation to methadone treatment.  *Doe*, 148 F.3d at 82-83.  The Second Circuit found that the plaintiff's "discrimination claims do not draw their substance from any allegedly discriminatory animus against the disabled," but instead derived from the defendants' "failure to provide him with tailored vocational services ... because of the particular needs of his disability."  *Id.*  The Second Circuit dismissed these claims because they challenged the adequacy of services, rather than discrimination on the basis of a disability.  *Id.*  Similarly, in *Cushing v. Moore*, the Second Circuit expressly held that Section 504 of the Rehabilitation Act only applies where the disability is unrelated to the services in question.  *Cushing*, 970 F.2d at 1109.

Courts in this district and throughout the circuit have reached similar conclusions.  *See, e.g.*, *Romano*, 246 F.R.D. at 440 (holding that a plaintiff cannot maintain a Rehabilitation Act claim where the disability is related to the services requested); *Griffin v. Doe*, 71 F. Supp.3d 306, 313 (N.D.N.Y. 2014) ("the ADA and Rehabilitation Act apply only where a disabled person is denied a benefit extended to non-handicapped individuals."); *McIntosh v. City of New York*, Case No. 14 Civ. 51, 2017 WL 473840, at *6 (E.D.N.Y. Feb. 3, 2017), *aff'd*, 722 F. App'x 42 (2d Cir. 2018) ("At worst, plaintiff's medical needs were negligently attended, but the ADA (and, by extension, the RA) is not violated by a prison or jail failing to attend to its disabled prisoners' medical needs.").

Here, taking the allegations as true, Plaintiff claims that Defendants failed to adequately care for Zlotnick, failed to protect him from life-threatening dangers, and failed to train and supervise staff to do the same.  These allegations attack the quality and adequacy of care which

Defendants were entrusted to provide Zlotnick due to his disabilities, but they do not assert

discrimination.  Instead, Plaintiff merely states that Zlotnick was discriminated against by reason

of his disabilities and that he was treated worse than the other residents, which is no more than a

restatement of the cause of action itself.  Based on the pleading standard established under

*Twombly* and *Iqbal*, Plaintiff must do more than repeat the elements of his causes of action, and

instead must assert facts that, at a minimum, can give rise to the claim.

Upon a careful review of the Amended Complaint, and even after making all factual

inferences in Plaintiff's favor, there are simply no facts asserted which give rise to a claim of

discrimination.  Plaintiff does not allege any facts which can show that Zlotnick was, in fact,

treated differently from or worse than other residents, denied benefits on the basis of his

disability, or that Defendants took any action against him whatsoever on the basis of his

disability.  Plaintiff certainly alleges that Defendants were negligent, but fails to connect any

discriminatory animus to their actions or omissions.  Instead, Plaintiff attacks the adequacy of the

care provided to Zlotnick, which cannot be sustained under the Rehabilitation Act.

The same is true for Plaintiff's claim that Defendants failed to provide reasonable

accommodations.  As the Second Circuit explained in *Doe v. Pfrommer*, a claim for the denial of

reasonable accommodations is not cognizable under the Rehabilitation Act where the

accommodations that were allegedly denied were the same services which Defendant was tasked

with providing to Zlotnick due to his disabilities.  *Doe*, 148 F.3d 73, 82-83.  Such a claim

amounts to an attack on the adequacy of services rendered, not a claim for discrimination.

Plaintiff relies on *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999) for the proposition

that Section 504 of the Rehabilitation Act can apply to claims concerning the substance of a

provider's services to a disabled individual.  In so doing, Plaintiff misconstrues *Olmstead*.
*Olmstead* concerned a mental health facility where two patients were forcibly segregated from other individuals and kept in isolation due to their disabilities.  *Id.* at 581.  Writing for the Court, Justice Ginsburg found that "[u]ndue institutionalization qualifies as discrimination 'by reason of ... disability.'"  *Id.* at 582.  *Olmstead* was filed under the Americans With Disabilities Act, not the Rehabilitation Act, and the ADA "specifically identifies unjustified 'segregation' of persons with disabilities as a 'for[m] of discrimination.'"  *Id.* citing 42 U.S.C.A. §§ 12101(a)(2) and (a)(5).  Accordingly, the Court *did not* hold, as Plaintiff suggests, that the Rehabilitation Act can be used to attack the adequacy of a provider's service, but rather that segregation can be a form of discrimination under the Americans with Disabilities Act.

Plaintiff also relies on *Martin v. Voinovich*, 840 F. Supp. 1175, 1192 (S.D. Ohio 1993) for the proposition that individuals can still be discriminated against as compared to individuals in the same protected class.  This proposition is true insofar as it goes, and so Plaintiff could establish discrimination by showing that Zlotnick was treated differently from the other residents on the basis of his disability.  But here, Plaintiff fails to show in any non-conclusory way that Zlotnick was actually treated differently from other residents on the basis of his disability.  It is certainly plausible that residents had different disabilities requiring different levels of care, and that the experience of some residents was more difficult due to unique vulnerabilities.  But such distinctions, upon which Plaintiff does not elaborate, would merely show that Zlotnick's *disability* caused his experience at Crystal Run Village to be different from that of other residents, not that those differences derive from discriminatory animus by Defendants.

At its core, Plaintiff's argument is that Defendants failed to properly care for Zlotnick,

which ultimately led to his death.  Plaintiff points out that a showing of discriminatory *intent* is not required under the Rehabilitation Act, and instead Plaintiff is only required to show deliberate indifference.  *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001).  And, stepping beyond the pleadings, Plaintiff states, without facts in support, that Defendants treated Zlotnick with deliberate indifference.  But the facts pleaded in the Amended Complaint show otherwise.  Taken as true, the Amended Complaint shows that Defendants were careless and understaffed, but there are no facts pleaded that can support a claim that Defendants were deliberately indifferent to Zlotnick, or that they were deliberately indifferent specifically on the basis of Zlotnick's disability.

Plaintiff does not allege that Defendants ignored Zlotnick because of any discriminatory animus, nor does Plaintiff suggest that Defendants mistreated Zlotnick due to his disabilities. Plaintiff alleges systemic failures at Defendant's facility, to which all residents would have been exposed, undercutting Plaintiff's claim of discrimination.  Plaintiff also does not suggest that Zlotnick was denied benefits which non-disabled persons could access, by virtue of the fact that the services at issue were given to Zlotnick because of and directly related to his disabilities.  The facts as alleged, taken in the light most favorable to Plaintiff, show no discrimination or discriminatory animus whatsoever.  This is clear when viewing Plaintiff's specific factual allegations pleaded under the Rehabilitation Act.

Plaintiff alleges that Defendants failed to provide necessary and proper care and supervision, including failing to search Zlotnick for food.  Taking this allegation as true, there are no facts in the Amended Complaint to suggest that Defendants refused to provide the necessary care and supervision on the basis of discriminatory animus, but instead due to negligence and

lack of care.  For example, on the day of Zlotnick's death, Plaintiff alleges that Cohen was

upstairs assisting another patient while Zlotnick was left unsupervised, and that the facility was

understaffed because, as the residents returned from daily outside programs, a second staff

member was late for her shift.  Taken as true, Plaintiff fails to show that Defendants left Zlotnick

unsupervised intentionally or due to deliberate indifference, but merely because Cohen was

paying attention to another resident, and the second staff member simply was not present until 20

minutes after she should have arrived.  This conduct does not show discriminatory animus or a

deliberate indifference to Zlotnick's disability, but merely a failure to adequately care for him.

Additionally, Plaintiff alleges that Defendant failed to provide Zlotnick with a safe

environment free from accessible food and drink, failed to take action after prior incidences

where Zlotnick and other residents accessed food and choked, failed to properly train and

supervise staff, and failed to remedy what Plaintiff describes as Defendants' neglect.  Any

general allegation concerning the level of care given to all residents, including general allegations

of the level of care and supervision of all staff members over all residents, pertain directly to the

level of care given to all persons in the facility and fail to show any discrimination directed at

Zlotnick.  Additionally, the facts alleged in the Amended Complaint demonstrate that Defendants

did attempt to supervise Zlotnick, provide him with a safe environment, and to remedy prior

incidents of choking.  The Amended Complaint describes the safety precautions and treatment

plans Defendant had in place to protect Zlotnick from those hazards, including locking food

away and supervising Zlotnick, especially when he was around food.  Viewing these allegations

in favor of Plaintiff, the facts show that Defendants did attempt to care for Zlotnick and keep him

safe, but they did so inadequately.  In other words, Plaintiff's allegation that Defendants tried but

failed to properly care of Zlotnick contradicts the requisite showing under the Rehabilitation Act, that Defendants intentionally mistreated Zlotnick, or did so with a reckless indifference.  Thus, Plaintiff cannot sustain a claim under the Rehabilitation Act.

**B.  Claims Under the Fair Housing Act**

Plaintiff's second cause of action is asserted against all Defendants under Sections 3604(f)(2) and 3617 of the Fair Housing Act based on two theories of liability.  First, Plaintiff alleges that Defendants subjected Zlotnick do a hostile housing environment by: (1) failing to ensure that Zlotnick could not access food, liquid, and medication outside of his prescribed consistency; (2) punishing Zlotnick when he accessed food; (3) failing to follow Zlotnick's service plans; and (4) treating Zlotnick worse that the other residents because of his disabilities.  Second, Plaintiff alleges that Defendants discriminated against him on the basis of his disabilities by treating Zlotnick worse than other residents by allowing him access to food, liquid, and medication beyond his service plan.[3]

As with Plaintiff's claim under the Rehabilitation Act, Plaintiff fails to make a prima facie case of discrimination under the Fair Housing Act.  It is uncontested that Zlotnick's disabilities could qualify him as a "handicapped" individual for the purposes of the Fair Housing Act.  The alleged "adverse action" would be Defendants' failure to keep Zlotnick safe, as well as the creation of a hostile environment.  Defendants argue that the claims should be rejected because they do not concern the sale, rental, or denial of a dwelling, however Plaintiff's claims concerning Defendants' treatment of Zlotnick would constitute a "post-acquisition" claim

---

[3] For the sake of clarity, the Court notes that Plaintiff's claims for discrimination and the creation of a hostile housing environment both fall under Section 3604(f)(2), and that Section 3617 would refer to claims of retaliation.

allowable under the Fair Housing Act.  Nevertheless, Plaintiff fails to plead sufficient facts to establish that the adverse actions took place under circumstances giving rise to an inference of discrimination with regard to any theory under the Fair Housing Act.

With regard to disparate treatment, Plaintiff fails to show any discriminatory animus against the protected group that was a significant factor for Defendants' actions or, in this case, their inaction.  Defendants were tasked with providing services to Zlotnick *because of* his disability.  Hence, Plaintiff does not plead sufficient facts to suggest that Defendants denied Zlotnick benefits because of his disability.  With regard to disparate impact, Plaintiff does not assert facts to suggest that certain outwardly neutral practices had a significantly adverse or disproportionate impact on disabled persons.  Instead, Plaintiff merely offers conclusory statements that Zlotnick was treated worse than other residents, without explaining how.  As with Plaintiff's claims under the Rehabilitation Act, these conclusory assertions are insufficient to state a claim.

Though Plaintiff asserts that Defendants failed to reasonably accommodate Zlotnick under the Rehabilitation Act, Plaintiff does not make that claim under the Fair Housing Act.  Even so, and for the sake of clarity, such a claim would fail under the Fair Housing Act as well.  Plaintiff cannot make a prima facie case because there are no facts to suggest that Defendants *refused* to provide a reasonable accommodation.  The facts show, at worst, that Defendants provided Zlotnick care for his disabilities for many years but did so negligently at the instant of his death.  Plaintiff does not offer any facts to show that Defendants refused to serve Zlotnick.

Finally, Plaintiff fails to establish a prima facie case that Defendants subjected Zlotnick to a hostile housing environment due to his disability.  The Court does not address whether Zlotnick

was subjected to a "sufficiently pervasive and severe" environment.  The facts, taken as true, show that Zlotnick was exposed to an environment that ultimately led to his death.  Furthermore, the Court wholly accepts Plaintiff's explanation that Zlotnick was subjected to dangers posed by everyday, household objects because of his disabilities.  Where Plaintiff falls short is in establishing that Defendants subjected Zlotnick to that environment, and that they did so *because of* Zlotnick's membership in the protected class.  *D.K. by L.K.*, 260 F.Supp.3d at 367.

Put another way, each theory of liability under Section 3604(f)(2) of the Fair Housing Act, including the creation of a hostile housing environment, requires intentionality and discriminatory animus on the part of the defendants to subject a tenant to unlawful conduct, that is, that the defendants subjected a tenant to discrimination or hostility because of the disability. Here, Plaintiff merely states that Zlotnick was treated worse than other residents due to his disability, but offers no facts in support.  The facts instead show that Defendants gave Zlotnick support because of his disabilities, but merely fell short, not due to discriminatory animus or intentionality, but, at worst, due to their own negligence and lack of adequate care.

The specific factual allegations in the Amended Complaint pleaded under the Fair Housing Act are largely the same allegations made under the Rehabilitation Act, and may thus be considered in tandem, as stated in *Forziano*.  To that end, the allegations in the Amended Complaint, taken in the light most favorable to Plaintiff, do not demonstrate discrimination or the creation of a hostile housing environment under the Fair Housing Act.

Plaintiff alleges that Defendants failed to ensure that Zlotnick could not access food, liquid, or medication outside of what was allowed in his treatment plan, and that Defendant failed to follow Zlotnick's service plans.  Plaintiff identifies five occasions since 2013 where

19

food had been left out which Zlotnick was able to access.  Taking these allegations as true, Defendants mistakenly left out food which Zlotnick was able to reach.  Plaintiff does not argue, nor do any facts suggest, that Defendants intentionally left food for Zlotnick to access, nor did they do so with a reckless disregard for Zlotnick's treatment plan.  At worst, Defendants were negligent in failing to adhere to Zlotnick's treatment plan, but Plaintiff fails to assert facts to connect that negligence to any discriminatory animus on the basis of Zlotnick's disabilities. Accordingly, Plaintiff cannot sustain a claim for discrimination under the Fair Housing Act.

Plaintiff alleges that Defendants punished Zlotnick when he accessed food, including one episode where a staff member allegedly slapped Zlotnick in order to expel food from his mouth. It could certainly be the case that physical contact including slapping an individual could, in a vacuum, constitute the creation of a hostile housing environment.  But here, even when looking at the facts in Plaintiff's favor, the incident Plaintiff describes is not a hostile assault, but staff members physically trying to prevent Zlotnick from choking on food in order to save his life. Plaintiff does not describe any instance where Zlotnick was actually punished for accessing food, but instead alleges that staff members resorted to physically trying to remove food from his person to prevent him from choking.

Plaintiff further alleges, without factual support, that Defendants treated Zlotnick worse than the other residents because of his disability, and they did so by allowing him to access food, liquid, and medication beyond his service plan.  As with Plaintiff's same claims under the Rehabilitation Act, these allegations do not constitute discrimination but instead inadequate care due to negligence.  Plaintiff describes these circumstances as Defendants' mistreatment of Zlotnick and argues that it would not have occurred absent Zlotnick's disabilities.  However, this

argument is a strawman.  The fact is that Zlotnick would not have been treated by Defendants whatsoever had he not been disabled.  Zlotnick was living in Crystal Run Village due to his disabilities, which caused the environment around him to become dangerous as compared to an individual without his specific disabilities.  But, under the Fair Housing Act, it is insufficient to show that Zlotnick was exposed to dangers because of his disabilities; instead, Plaintiff must show that Defendants created the hostile environment, and they did so with discriminatory animus, either intentionally or with a reckless indifference.  Plaintiff fails to plead facts to make that showing, even when making all inferences in Plaintiff's favor.

Section 3617 of the Fair Housing Act is inapplicable here.  Plaintiff does not plead that Zlotnick engaged in a protected activity against which Defendants took an adverse action due to a retaliatory motive.  Instead, Plaintiff pleads discrimination under this section, which appears to have been a mistake, as Plaintiff makes no allegation of retaliation whatsoever.  Accordingly, this claim must also be dismissed.

## C.    State Law Claims

Plaintiff's remaining claims are made under state law.  Plaintiff realleges that Defendants discriminated against Zlotnick and exposed him to a hostile living environment, but in violation of the New York Human Rights Law, N.Y. Exec Law § 296(5).  Plaintiff also alleges common law negligence and wrongful death under the New York Estates, Powers and Trusts Law § 5-4.1 against all Defendants.  Defendants move to dismiss these claims for lack of subject matter jurisdiction, in the event that the federal claims are dismissed.  Because Plaintiff's claims under the Rehabilitation Act and the Fair Housing Act have been dismissed, the Court must also, therefore, dismiss Plaintiff's state law claims.

21

**D.      Opportunity to Cure**

Plaintiff has not moved for leave to amend the pleading.  Nevertheless, "it has been held that a court 'has the discretion to grant leave to amend sua sponte' even when the amending party has 'not moved for leave to amend the [pleading].'"  *Khodeir v. Sayyed*, 323 F.R.D. 193, 196 (S.D.N.Y. 2017) (internal citations omitted).  "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in the position to weigh the practicality and possible means of curing specific deficiencies."  *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).  When a pleading is dismissed, the "proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient."  *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017).  Accordingly, the Court will grant Plaintiff 30 days to file a Second Amended Complaint, if Plaintiff chooses to do so.

## V.   CONCLUSION

Based on the forgoing, Defendants' motion is **GRANTED**.  This matter will remain open for 30 days from the date of this decision, during which time Plaintiff is granted leave to file a second amended complaint.  After 30 days, the Amended Complaint shall be **DISMISSED**.  The Clerk is respectfully directed to terminate the motion at Dkt. 29.

Dated:  October 27, 2021
         White Plains, New York

                                        **SO ORDERED**

                                        _____
                                        Paul E. Davison, U.S.M.J.